UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PERFORMANCE INDUSTRIES
MANUFACTURING, INC.,

  Plaintiff,

v.                                Case No. 8:18-cv-00510-T-02AAS

VORTEX PERFORMANCE PTY LTD.,

  Defendant.
_____/

## ORDER

This is a dispute between two vendors of motorcycle parts. Plaintiff Performance Industries Manufacturing, Inc. is an American company and Defendant Vortex Performance Pty Ltd. is Australian. For many years, both have used the trademark "Vortex." The matter comes to the Court on Defendant's Motion to Dismiss. Dkt. 19. Plaintiff has filed a Memorandum in Opposition. Dkt. 26. The Court **GRANTS** the motion and dismisses Plaintiff's Amended Complaint, Dkt. 17, for lack of personal jurisdiction.

## BACKGROUND

This action stems from Defendant's alleged infringement of Plaintiff's Vortex trademark. In its Amended Complaint, Plaintiff brings one count of

trademark infringement under 15 U.S.C. § 1114, asserting that Defendant "purposefully directs business activities to and conducts business activities in this judicial district" by "promoting and selling products" with the Vortex designation to Florida residents, including through Defendant's website. Dkt. 17 ¶¶ 6-7. Plaintiff further alleges that Defendant "controls a distributor network to ship and disseminate products bearing the Vortex mark into Florida and throughout the United States." *Id.* ¶¶ 9-19. Plaintiff also claims that Defendant "intentionally uses the Vortex trademark with knowledge of [Plaintiff's] trademark rights in the Vortex mark," which constitutes intentional tortious wrongdoing. *Id.* ¶¶ 20-31.

Defendant moves to dismiss the Amended Complaint for lack of personal jurisdiction. Dkt. 19. In support, Defendant submitted the declaration of its managing director and one of its owners, Richard Muurling. Dkt. 19-1. According to Mr. Muurling, Defendant "is a privately-owned company organized under the laws of Australia" with its principal and only place of business located in Victoria, Australia. *Id.* at 1. Mr. Muurling further states that Defendant:

- is not incorporated or registered to do business in Florida;
- does not maintain any office, facility, mailing address, or telephone listing in Florida;
- does not own or lease any property in Florida;
- does not maintain any bank accounts in Florida;
- does not have any U.S. employees, owners or agents;
- does not manufacture any of its products in the United States;

2

- does not advertise its products in any magazine, trade journal, or other advertising publication intended for circulation in the United States or within Florida;
- does not have any authorization or license to conduct business in Florida;
- has purchasers accept delivery of Vortex products in Australia and then direct shipment from Australia to other locations;
- does not sell products that are Freight on Board (FOB) in Florida, or anywhere else in the United States;
- transfers possession of all purchased products to purchasers in Melbourne, Australia;
- is not responsible for shipment, use, and loss of Vortex products once purchasers take possession FOB in Australia;
- makes all Vortex sales and/or purchases in Australian dollars;
- does not exercise control over distributors or the manner in which Vortex products are marketed, resold or installed in the United States;
- is not a party to, nor has it ever established or entered into any formal agreements with any distributors;
- does not receive any royalty payments or any portion of its distributors' sales or revenues of Vortex products;
- does not require distributors to provide, nor has Defendant ever received from its distributors, any records, reports or other information pertaining to the distributors' marketing, sales and/or installation of Vortex products;
- has never audited or reviewed the sales records of any of its distributors;
- is not a party to, nor has it ever established or entered into, an indemnification agreement whereby it agreed to indemnify or otherwise protect distributors from third-party damages or injuries resulting from the use of Vortex products;
- is not a party to, and has never established or entered into, any formal warranty agreements for Vortex products and any claims or repairs under its limited warranty to original purchasers are reviewed and made in Australia;
- has not previously consented and does not consent to being sued in the state or federal courts of Florida.

Dkt. 19-1 at 1-5.

3

Defendant also requires purchasers to accept its Terms and Conditions of Sale prior to purchasing any of Defendant's products. Dkt. 19-1 at 4. The terms provide that all orders are FOB Melbourne, Victoria, Australia, that any duties and taxes at the ship to destination country are the sole responsibility of the purchaser, and that Defendant is an Australian company governed by Australian common law. Dkt. 17-4 at 2.

## LEGAL STANDARD

Plaintiff bears the burden of "establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-civ, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013) (citation omitted). Where a defendant submits affidavits to the contrary, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citation omitted). "[If] a plaintiff proffers no competent evidence to establish jurisdiction in opposition to the denials of the jurisdictional allegations contained in the defendant's affidavit, a district court may find the defendant's unrebutted denials sufficient to negate the plaintiff's jurisdictional allegations." *Zapata*, 2013 WL 1100028, at *2 (citation omitted).

4

# DISCUSSION

The Court's inquiry is two-fold: "(1) whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation omitted). The Court finds that, based on the unrebutted statements in Defendant's declaration, Plaintiff's allegations do not satisfy the requirements of either Florida's long-arm statute or due process. Additional jurisdictional discovery is unwarranted.

I. <u>Florida's Long-Arm Statute</u>

Under Florida's long-arm statute, a nonresident submits to Florida's specific jurisdiction by "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," Fla. Stat. § 48.193(1)(a)(1), or "[c]omitting a tortious act within this state," Fla. Stat. § 48.193(1)(a)(2). In its opposition, Plaintiff argues that Defendant both "conducts business in Florida and committed the tort of trademark infringement, through at least the acts of its distributors." Dkt. 26 at 3.[1]

---

[1] Though the Court limits its analysis to the subsections Plaintiff relies upon, the Court notes that general personal jurisdiction under section 48.193(2), Florida Statutes, is also lacking. Defendant has not had "substantial and not isolated activity" in Florida. *See also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted) (finding a court should only "assert general jurisdiction over foreign (sister-state or foreign-county) corporations . . . when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State"); *Carmouche v. Tamborlee Mgmt.*,

5

1. Defendant does not conduct or carry on business in Florida.

"In order to establish that a defendant is 'carrying on business' for the purposes of Florida's long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 F. App'x 779, 783 (11th Cir. 2014) (citation and alterations omitted). This "can be satisfied either by (1) doing a series of similar acts for the purpose of thereby realizing pecuniary benefit or (2) doing a single act for such purpose with the intention of thereby initiating a series of such acts." *Id.* at 783-84 (citations and quotation marks omitted). Factors relevant to whether a defendant engaged in a "general course of business activity" include "(1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients." *Id.* at 784 (citations and quotation marks omitted).

Simply put, based on the record no factor is satisfied. As noted above, it is undisputed that Defendant neither operates or maintains an office in Florida nor has a license to do business in Florida. While the statute does provide that an agent

---

*Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015) ("[A] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").

6

of a defendant can satisfy the requirement, as explained more fully below, Mr. Murrling's declaration demonstrates that Defendant lacks control over the distributors' marketing, selling, and installation of any Vortex products. Additionally, the distributors are not based in Florida.

The Court has no evidence of the percentage of revenue from Florida customers in comparison to total revenue, but there is no indication it would be enough to compensate for the above deficiencies. Rather, Defendant's only act implicating Florida is maintaining and operating a generally-accessible website that allows for shipments to the State. This does not by itself constitute "conducting" or "carrying on business" in Florida.

2. <u>Defendant has not committed a tortious act within Florida.</u>

While section 48.193(1)(a)(2), Florida Statutes, permits jurisdiction over a defendant for "[c]omitting a tortious act within this state," the U.S. Court of Appeals for the Eleventh Circuit has held this includes a "nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citation omitted). *Lovelady* involved a trademark infringement suit for misappropriation of name and likeness where the plaintiff sold allegedly infringing material through a website. *Id.* at 1282-83. The court ultimately found that because the website could be accessed

7

in the plaintiff's State of residence of Florida, injury was caused inside the State, thereby satisfying the long-arm statute. *Id.* at 1283-84.[2]

*Lovelady*, however, is expressly limited to its facts: "[W]here the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use is aimed at the victim's state of residence, the victim may hale the infringer into that state to obtain redress for the injury." *Id.* at 1288 n.8. The court was careful to note its decision was not "intend[ed] to establish any general rule for personal jurisdiction in the internet context." *Id.* For example, the defendant in *Lovelady* made several profit-making trips to Florida as part of the same business he was sued upon. *Id.* at 1282. *Lovelady* further involved actual alleged dishonest conduct and claims of false endorsement. Here we have two similar and distinct companies that have used a name, primarily in different geographical markets, for many years.[3]

---

[2] Framed this way, the issue of the location of the injury in a trademark infringement case becomes secondary, though courts have generally found that trademark infringement and unfair competition occur "where the passing off occurs, i.e, where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956) (Waterman, J.); 6 *McCarthy on Trademarks & Unfair Competition* § 32:38.40 (4th ed. 2017) ("Today, almost all courts follow the [*Vanity Fair*] rule that a claim of trademark infringement takes place where the allegedly infringing sales occur."). The court in *Lovelady* noted that because the website was accessible in Florida, the mark was "passed off" and injury thereby occurred in Florida. *Lovelady*, 544 F.3d at 1283 n.1.

[3] Some courts have relied on *Lovelady* in finding section 48.193(1)(a)(2), Florida Statutes, satisfied. *E.g.*, *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, No. 13-CV-23066, 2014 WL 11899285, at *2 (S.D. Fla. July 15, 2014); *DCS Real Estate Inv., LLC v. Bella Collina Events*, LLC, No. 5:14-cv-678-JSM-PRL, 2015 WL 628586, at *2 (M.D. Fla. Feb. 12, 2015). But in *Bulpit, LLC v. DeCanio*, No. 2:13-cv-14119-KMM, 2013 WL 12126313 (S.D. Fla. June 7, 2013) the district court found no personal jurisdiction, observing that *Lovelady*'s language of "the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida" is dicta. 2013 WL 12126313, at *4-5.

*Lovelady* is contrast to a case like *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405 (Sept. 21, 2017). There, an establishment's Facebook, Twitter, Yelp, and TripAdvisor website pages, which included an allegedly infringing mark, were accessible in Florida. 2017 WL 4182405, at *1. In finding no tortious conduct in Florida, the court reasoned that *Lovelady* was inapplicable in the absence of sales through the websites. *Id.*, at *2.

The district court in *Blue Water* also noted decisions for the proposition that selling products on a website is insufficient "to establish personal jurisdiction wherever a person might buy the product (in other words, wherever the Internet is available)." *Id.*, at *2 n.7 (citations omitted). "Rather, the defendant's website must sell a 'significant' quantity of goods to people in the forum." *Id.* (citation omitted); *see also Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1126-27 (M.D. Fla. 2006) (finding no personal jurisdiction where the defendant made two sales to Florida residents and conditioned the use of its website on an agreement which provided for exclusive jurisdiction in Tennessee)[4]; *Shamsuddin v. Vitamin*

---

The Court of Appeals for the Eleventh Circuit revisited *Lovelady* in *Louis Vuitton* but did not need to decide that case on the accessibility of a website in Florida alone. There, the plaintiff had alleged additional tortious conduct in the State that satisfied the statute. *Louis Vuitton*, 736 F.3d at 1354.

[4] Defendant also argues that, similar to the provision for exclusive jurisdiction in *Instabook*, its contractual terms requiring purchasers to buy, accept delivery, and take possession of the goods in Australia effectively bar a finding of personal jurisdiction. Because Plaintiff fails to carry its burden on separate grounds, the Court need not resolve this point.

*Research Prods.*, 346 F. Supp. 2d 804, 813 (D. Md. 2004) (no personal jurisdiction where only contacts with State were interactive website and two sales to residents).

The facts in this case lie somewhere in the middle. While Defendant maintains and operates a website that does allow for purchase and delivery, and that website is accessible in Florida (as it is anywhere with internet connectivity), there is no evidence of "significant" sales in the State. The only actual "sales" in Florida presented by Plaintiff appear to have been caused by Plaintiff's counsel as part of this litigation.

Thus, neither section 48.193(1)(a)(1) nor 48.193(1)(a)(2) of Florida's long-arm statute is satisfied. Even if one were, exercise of personal jurisdiction over Defendant would run afoul of due process.

II.     Due Process

Specific personal jurisdiction cases require a court to "examine[] (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton*, 736 F.3d at 1355 (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a

defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citation and quotation marks omitted).

1. "Arising Out of or Relate to"

The inquiry into whether Plaintiff's claim "arise[s] out of or relate[s] to at least one of [Defendant's] contacts with the forum" focuses on "the direct causal relationship between the defendant, the forum, and the litigation." *Louis Vuitton*, 736 F.3d at 1355-56 (citations omitted). This action concerns alleged infringement of a Florida corporation's trademark. Examples of the allegedly infringing products can be found and purchased on Defendant's website, which is accessible worldwide. This element is satisfied only in the most attenuated manner that any website selling goods worldwide may be accessed from Florida.

2. Purposeful Availment

To evaluate purposeful availment in *Louis Vuitton*, a trademark infringement case, the court applied the "effects test." *Louis Vuitton*, 736 F.3d at 1356. This is satisfied where a tort: "(1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in

the forum state." *Id.* (modifications and citation omitted); *see also Lovelady*, 544 F.3d at 1285-88 (applying effects test in trademark infringement case).[5]

Even if trademark infringement is characterized as an intentional tort, it was certainly not aimed at Florida. Unlike in *Lovelady* and *Louis Vuitton*, Defendant does not have contacts with Florida other than through its generally-accessible website. Defendant carries on no activity in Florida. It does not close sales or perform any services in Florida. It does not solicit business through salespersons or advertising intended to reach Florida. Nor does the record reveal that any Vortex products were sold or introduced by Defendant in Florida.

It is not enough that, through distributors or other channels, Defendant's Vortex products might have found their way to Florida. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295-98 (1980); *see also Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) (finding that jurisdiction is not established by a party's "awareness that the stream of commerce may or will sweep the product into the forum State"); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (finding no personal jurisdiction despite the

---

[5] Under the traditional minimum contacts test, meanwhile, a court determines whether the defendant's contacts with the forum State: "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357 (citation omitted). Though the Court applies the effects test, it does note that by merely operating a website that is accessible in Florida, in the absence of significant sales, Defendant has not purposefully availed itself of the privileges of doing business in the State. The Court does not, therefore, need to conclusively determine whether the conduct alleged was "intentional."

defendant's use of a distributor in the United States and four of its products ending up in the forum State).

The plurality opinion in *Asahi* did leave open the possibility for personal jurisdiction where a defendant "indicate[s] an intent or purpose to serve the market in the forum State . . . [by] marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." 480 U.S. at 112. But subsequent courts have found that this is proper "not because the agent's acts are imputed to the principal," but because utilizing distributors that market in a particular forum is an act purposefully directed toward that forum. *Gourdine v. Karl Storz Endoscopy-Am., Inc.*, 223 F. Supp. 3d 475, 487 (D.S.C. 2016) (citations and internal quotation marks omitted) (finding personal jurisdiction where marketing through distributor was directed at the forum State); s*ee also Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010) ("[I]t is not the actions of the . . . intermediary that count, but the actions of the foreign manufacturer who markets and distributes the product to profit from the [forum State's] economy."); *Carr v. Pouilloux, S.A.*, 947 F. Supp. 393, 398 (C.D. Ill. 1996) (personal jurisdiction where the defendant "expressly marketed its products through a distributor who agreed to serve as its sales agent in the entire United States, including [the forum State]" and where there was a distribution agreement that allowed for the defendant to "expressly reserved for itself the right to control the distribution system that brings

13

the [products] into [the State]"); *Cf. Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 459 (10th Cir. 1996) ("We are persuaded that in the absence of an agency relationship, the acts of a distributor are not ordinarily attributable to a foreign manufacturer for purposes of establishing general jurisdiction.")

Here, there is simply no indicia of control by, or any actions of, Defendant that evidence directing business at Florida. Plaintiff points to a comment by a U.S. distributor in an email that it wished to bring the matter of the trademark dispute to the Defendant's attention. Dkt. 17-11 at 2. But this was in response to a letter from Plaintiff demanding the distributor cease use of the mark and identify the name and location of the manufacturer. Dkt. 17-10. This is hardly "control over [Plaintiff's] legal matters and those of its distributors" as Plaintiff suggests. Dkt. 17 ¶ 14. Plaintiff also directs the Court to distributor information and a distributor login portal on Defendant's website, Dkts. 17-5, 17-6, but again there is nothing about this fact that suggests control. And unlike many of the cases where courts have found personal jurisdiction, here there is no formal distribution agreement between Defendant and its distributors.

At most, Plaintiff has shown that Defendant advertises its Vortex products on a generally-accessible website, and that a limited number of products could possibly make their way into Florida through distributors over whom Defendant has no control. But the mere "placement of a product into the stream of commerce,

without more, is not an act of the defendant purposefully directed toward the forum state." *Asahi*, 480 U.S. at 112. This element is not satisfied. Defendant "purposefully avails" itself of absolutely nothing related to Florida or Florida law.

3. Fair Play and Substantial Justice

To determine whether the exercise of personal jurisdiction over Defendant in Florida comports with fair play and substantial justice, the following considerations are relevant: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Louis Vuitton*, 736 F.3d at 1358 (citation and quotation marks omitted); *see also Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction across national borders.").

It is no understatement to say the burden on Defendant would be immense. Defendant is a small company that employs three people. It manufactures and sells its products from its principal place of business in Australia. And Defendant has no U.S. employees, owners, or agents, or any physical presence or property. Defendants' three domestic distributors appear to be akin to motorcycle supply

shops and are all located in California. This burden alone outweighs the remaining factors.

Apart from the fact that Plaintiff is a Florida resident, this is not a case in which the State has a particularly strong judicial interest. Moreover, there is nothing unique about this case that provides added weight to Plaintiff's choice of a convenient forum for relief, given the massive costs to Defendant and Florida's tenuous connection to the dispute, or the judicial system's interest in resolving the dispute. Defendant has made a compelling case that exercising personal jurisdiction would violate traditional notions of fair play and substantial justice.

III. <u>Jurisdictional Discovery</u>

In its opposition, Plaintiff also requested an opportunity to brief the Court on the need for jurisdictional discovery. Dkt. 26 at 13. This is an acknowledgement that Plaintiff possesses no proof of Defendant's sales into Florida other than those generated for this lawsuit.

In response to the Court's allowance of supplemental briefing, Plaintiff cited *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 n.7 (11th Cir. 1982) for the proposition that "[b]ecause jurisdictional facts are in dispute, the Court 'does not have discretion to grant or deny a request for jurisdictional discovery.'" Dkt. 39 at 1 (quoting *Eaton*). But for this "qualified right" of discovery to be properly

invoked, discovery must lead to "sufficiently material" facts. *Bernardele v. Bonorino,* 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009).

Due to the lack of control by Defendant over the three U.S. distributors, the materiality of the distributors' sales is greatly attenuated. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.,* KG, 646 F.3d 589, 598 (8th Cir. 2011) (denying jurisdictional discovery where, *inter alia*, even if the defendant had "poured its products" into forum State through its local distributor, the allegations were insufficient to establish personal jurisdiction). And there is no indication that any direct sales by Defendant would rise to the amount necessary to cure the above deficiencies.

The fact that it is possible to purchase and ship Defendant's products FOB Australia to Florida—and that there have been three deliveries to the State courtesy of Plaintiff—is insufficient. So too are Plaintiff's mere allegations of Defendant's contacts. *See McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir. 1983) (affirming denial of jurisdictional discovery where "[a]gainst the defendants' affidavits [the plaintiff] offered nothing beyond his bare allegations that the defendants had had significant contacts with the [forum State]" (internal quotation marks omitted)). Lastly, on the off-chance that discovery unearths a substantial number of sales by Defendant to Florida, Plaintiff is still unable to clear the "fair play" and "substantial justice" hurdle imposed by due process.

Rather, as in *Instabook*, Plaintiff "has only generally requested such discovery, without explaining how such discovery would bolster its contentions." 469 F. Supp. 2d at 1127. Furthermore, the record is bereft of any indication of fraud or misconduct in Defendant's jurisdictional affidavits, or any suggestion that additional information will alter the jurisdictional analysis. *See Shamsuddin*, 346 F. Supp. 2d at 818 (quoting *Rich v. KIS Cal, Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to the issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

In short, Plaintiff fails to rebut the statements set forth in Mr. Muurling's declaration that demonstrate personal jurisdiction is lacking. Plaintiff has thus not met its burden and dismissal is warranted.

## CONCLUSION

The Court **GRANTS** Defendant's Motion to Dismiss. Dkt. 19. Plaintiff's Amended Complaint, Dkt. 17, is **DISMISSED**. The Clerk is directed to enter judgment and close the case.

**DONE AND ORDERED** at Tampa, Florida, on January 2, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record